UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
SHELDON P. JOHNSON,                             :
                                                :
                          Petitioner,           :           **MEMORANDUM**
                                                :           **AND ORDER**
     -against-                                  :
                                                :           03 Civ. 5086 (LBS)
ROY GIRDICH,                                    :
                                                :
                          Respondent.           :
------------------------------------------------------x

SAND, District Judge.

Petitioner Sheldon P. Johnson ("Petitioner") filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition, which contained unexhausted claims, was stayed at Petitioner's request, and the unexhausted claims temporarily dismissed, so that those claims could be exhausted in state court by means of a motion under section 440.10 of the New York Criminal Procedure Law ("CPL"). After a significant delay, Petitioner eventually returned to this Court and moved to amend his petition to reincorporate the now-exhausted claims.

In a previous Memorandum and Order, familiarity with which is assumed, the Court directed Petitioner to give answers under oath to a set of Interrogatories in order to enable the Court to determine whether the amended petition should be dismissed as untimely. Johnson v. Girdich, 03 Civ. 5086, 2005 U.S. Dist. LEXIS 2725 (S.D.N.Y. Feb. 23, 2005). Pursuant to Rule 7(c) of the Rules Governing Section 2254 Cases in the United States District Courts, Respondent was given an opportunity to admit or deny the correctness of those answers. The Court has received Petitioner's answers to the Interrogatories and Respondent's responses thereto. For the reasons stated below, we now determine that Respondent must be given an opportunity to admit or deny the correctness of certain evidentiary material submitted with Respondent's responses.

**I. Background**

The Interrogatories were propounded in order to ascertain whether Petitioner's access to legal materials and assistance was sufficiently restricted during relevant portions of his incarceration to justify tolling of the limited time that Petitioner was granted to return to this Court with an amended petition following exhaustion. Petitioner avers in his response to the Interrogatories that he was confined in a special housing unit ("S.H.U.") from November 19, 2001 until April 19, 2002; from July 7, 2002 until December 15, 2002; from January 2, 2003 until April 4, 2003; and from August 29, 2003 until May 19, 2004. Respondent concedes that Petitioner was so confined at least from January 11, 2003 until early April of 2003, and from August 29, 2003 until May 17, 2004. The significant disputed point is not the extent of Petitioner's S.H.U. confinement, but the effect of that confinement on his access to legal materials, and the legal implications (if any) of such effect.

During his S.H.U. confinement, Petitioner asserts that his access to legal materials was significantly limited. A typical request for legal materials, he contends, would result in "receiving the incorrect books" for approximately ten days after the request was made, followed by "a back and forth process... until the correct materials [were] received," and he was limited to "2 legal [items] 'per request, per day.'" (Pet'r Resp. to Interrogs. at 2.) Furthermore, "in retaliation to" grievances that Petitioner had filed, "mysteriously... legal request slips disappear never reaching their intended destinations." (Id.) A November 28 letter to the Court is said to have "similarly" disappeared. (Id.)

Petitioner asserts that he "was unaware that Appeal to the Court of Appeals was not an available option in a denial of a Post Conviction motion (440) due to the failure and timeliness [sic] of the S.H.U. law library in delivering legal materials." (Pet'r Resp. to Interrogs. at 3.) This would tend to explain why Petitioner did not "return to this Court following the resolution

of his state court motion" within thirty days, as he had been instructed to do by the order staying his petition: purportedly, he did not know that the Appellate Division's denial of leave to appeal the denial of his CPL § 440.10 motion was in fact the final resolution of his state court motion. When he "did finally receive the correct legal materials," Petitioner avers, "it was already mid November 2003." (Id.)

The November 28th, 2003 letter that is said to have mysteriously disappeared stated, in accordance with what Petitioner says was his newly acquired knowledge, that Petitioner "ha[d] now exhausted all state remedies and appeals." (Id.) Proceeding "under the assumption that the court received his letter," Petitioner avers, he was "patiently awaiting a response on how to further proceed." (Id. at 4.) He appears to have waited until April of 2004, when he sent another letter to the Court, which the Court did receive, noting the exhaustion of his claims.

Respondent argues that even if Petitioner's allegations were true, they would not justify equitable tolling. Respondent further contends that Petitioner "has failed to carry his burden to show that his alleged limited access to legal assistance prevented him from meeting the 30-day deadline that was set forth in this Court's stay Order." (Resp't Resp. at 2.) Petitioner's letter notifying the Court that his claims had been exhausted, Respondent points out, "cites not a single legal authority or otherwise reflects any legal research." (Id. at 2-3.)

As to Petitioner's allegations that "he was researching the appealability of the Appellate Division's denial of his leave application," Respondent offers two counterarguments. (Id. at 3.) First, Respondent contends that "petitioner's alleged difficulty in accessing library materials cannot explain why he waited until May 2004 to tell the Court he had completed exhaustion" because "even by petitioner's own account, he learned in November 2003 that he had no further avenue of appeal available to him in state court." (Id.) Second, Respondent contends that none of "the requests for legal materials that petitioner made during the 30-day period after the

3

Appellate Division denied leave to appeal…. support[] petitioner's claim that he was researching his right to appeal the Appellate Division's decision." (Id.) In support of this contention, Respondent has attached purported copies of those requests as Exhibit C to the response. (Exhibits A and B, referenced only in a footnote of the response, are purported copies of the law library policies for two of the facilities at which Petitioner was confined in an S.H.U.)

**II. Analysis**

As a preliminary matter, the Court notes that neither Petitioner's answers to the interrogatories nor Respondent's response thereto appear to have been given under oath. It could therefore be argued that neither Petitioner's answers nor the unauthenticated materials attached to Respondent's response are properly part of the record under Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, which provides for the inclusion of "answers under oath to written interrogatories propounded by the judge" or "affidavits" but does not mention unsworn statements, and states that "[t]he judge may require that… materials [introduced into the record] be authenticated." Neither party has made such an argument, however,[1] and in any event further submissions will be required for the reasons explained below. Therefore, the parties will be given an opportunity at the time of those further submissions to remedy the unsworn nature of their previous submissions.

Rule 7 provides that when additional materials are included in the record, "[t]he judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness." 28 USCS § 2254 Cases R. 7(b) (2005). This requirement is not limited to responses to interrogatories, but includes other sorts of materials such as "documents" and

---

[1] Respondent did refer in passing to "petitioner's unsworn answers to the Court's interrogatories" (Resp't Resp. at 1), but did not contend that the answers should be excluded from the record because they were unsworn.

4

"exhibits." Id. at 7(b)-(c). The materials submitted with Respondent's response to Petitioner's interrogatory answers are the sort of exhibits to which Petitioner should be allowed an opportunity to respond under Rule 7. Exhibit C, in particular, is offered not merely as background material but in order to refute a key aspect of Petitioner's claim for equitable tolling.

If Petitioner's allegations were clearly insufficient to qualify his amended petition as timely, it might be appropriate to ignore the exhibits offered by Respondent and dismiss the petition without affording Petitioner the opportunity to respond to those exhibits. That is not the case here, however. True, the thirty-day period following exhaustion within which Petitioner had been instructed to return to this Court expired "by November 20, 2003, at the latest," Johnson, 2005 U.S. Dist. LEXIS 2725 at *14, so a significant amount of tolling would be required to excuse Petitioner's belated sending of a letter to the Court in April of 2004 and his filing of an amended complaint in early June of 2004. But if Petitioner's allegations were accepted in their entirety, such tolling could potentially be justified by the combination of two factors: Petitioner's improperly delayed acquisition of the knowledge that the denial of leave to appeal a CPL § 440.10 motion could not itself be appealed to the Court of Appeals, and the retaliatory "disappearance" of Petitioner's November 28 letter.

Depriving a prisoner of "adequate law libraries or adequate assistance from persons trained in the law," Bounds v. Smith, 430 U.S. 817, 828 (1977), sufficient to afford him "a reasonably adequate opportunity to file nonfrivolous legal claims challenging [his] conviction[]," Lewis v. Casey, 518 U.S. 343, 356 (1996), would be a violation of his constitutional rights, and thus possibly "'extraordinary' as a matter of law" and a ground for equitable tolling even of the strict statutory time limit governing the initial filing of habeas petitions, Valverde v. Stinson, 224 F.3d 129, 133 (2000). Confiscation of a prisoner's legal papers or refusal to allow a prisoner to mail legal papers could also support tolling even of the statutory limitations period, see Valverde,

224 F.3d at 133-34, and the mysterious disappearance of a letter in retaliation for the filing of grievances would be closely analogous to confiscation of that letter. Respondent's argument that "petitioner's alleged difficulty in accessing library materials cannot explain why he waited until May 2004 to tell the Court he had completed exhaustion" (Resp't Resp. at 2) misses this latter point; a retaliatory "disappearance" of the February 28 letter could justify the additional delay.

What is at issue here, in any event, is not tolling of a statutory limitations period, but tolling of the period given a petitioner to return to federal court following exhaustion after a timely-filed but mixed petition has been stayed pursuant to Zarvela v. Artuz, 254 F.3d 374, 382 (2d Cir. 2001). The standard for such tolling has never been precisely specified either by the Second Circuit or by the Supreme Court. See Zarvela, 254 F.3d at 381 (stating that a district court "should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed" and that "[i]f either condition of the stay is not met, the stay *may* later be vacated nunc pro tunc as of the date the stay was entered, and the petition *may* be dismissed") (emphasis added); Rhines v. Weber, ___ U.S. ___, 125 S. Ct. 1528, 1535 (2005) (citing Zarvela with approval and stating that "district courts should place reasonable time limits on a petitioner's trip to state court and back"). As was noted in this Court's February 2005 Memorandum and Order, it does appear that Petitioner would have to meet the Valverde standard of "extraordinary or exceptional cimrcumstances" even to toll the 30-day period of a Zarvela stay, because "the requirement of 'prompt action' created by the 30-day period is meant to 'serve[] as the functional equivalent of the "reasonable diligence" that has long been a prerequisite to equitable tolling of limitations periods.'" 2005 U.S. Dist. LEXIS 2725 at *20 (quoting Zarvela, 254 F.3d at 382). Nonetheless, the legally unsettled nature of the question whether precisely the same showing is required to toll

6

the 30-day period of a Zarvela stay as to toll a statutory limitations period counsels in favor of developing a full evidentiary record.

This extended process of record development might not be justified if Petitioner's claims were clearly lacking in merit. Cf. Rhines, 125 S. Ct. at 1535 (stating that "even if a petitioner had good cause for [a] failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.") But as noted in this Court's previous Memorandum and Order, Petitioner's concededly exhausted public trial claim, at least, is not plainly meritless. It is therefore important to determine whether Petitioner has forfeited the right to have the merits of this claim adjudicated by seeking a stay in order to exhaust other claims and then returning to the Court in an untimely fashion.

**III. Conclusion**

For the reasons stated above, Petitioner is directed to submit, within forty-five (45) days of the date of this Memorandum and Order, a sworn statement (that is, a statement made under oath) in which he (1) attests that his previous answers to this Court's interrogatories were truthful, (2) admits or denies the correctness of Exhibit C to Respondent's response to Petitioner's interrogatory answers, and also the correctness of Exhibits A and B if he so desires, and (3) provides any additional facts that he feels are necessary to explain how those exhibits, if accurate, are consistent with his previous answers to this Court's interrogatories. Petitioner is further directed to serve a copy of this sworn statement on Respondent. If Petitioner is unsure how to comply with the requirement of this Court's Order that his statement be made under oath, he may seek assistance from the Court's Pro Se Office.

If Petitioner provides such a sworn statement, Respondent shall have forty-five (45) days from receipt of the statement to submit a response to that statement and an affidavit

authenticating the materials previously submitted to this Court as exhibits to Respondent's response to Petitioner's interrogatory answers. If Petitioner does not provide such a sworn statement, the petition will be subject to dismissal.

SO ORDERED.

Dated: New York, New York
September __, 2005

_____
U.S.D.J.